USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/13/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

RCA TRADEMARK MANAGEMENT S.A.S.,      :

                        Plaintiff,    :      14 Civ. 6294 (LTS)(HBP)

     -against-                        :      MEMORANDUM OPINION
                                             AND ORDER
VOXX INTERNATIONAL CORP.,             :
f/k/a "Audiovox Corp.," et al.,
                                      :
                        Defendants.
                                      :
------------------------------------X

          PITMAN, United States Magistrate Judge:


          By letter dated July 23, 2015, defendants move for an

Order compelling plaintiff to produce two witnesses -- Manuele

Wahl and Emmanuelle Petit[1] -- in New York for deposition (Docket

Item 125.

          This is a breach of contract action.  In 2006, plain-

tiff's parent entered into a contract with Audiovox Corporation

("Voxx") in which it sold certain businesses, assets and trade-

marks to Voxx (First Amended Complaint, dated May 15, 2014

(Docket Item 53) ("Am. Compl.") ¶ 7).  The principal issue in

this action is whether the transaction included the transfer of

_____

          [1]Defendants' application originally also sought to compel
plaintiff to produce Frederic Rose in New York to be deposed.
Defendants have withdrawn this aspect of their application
without prejudice to renewal.

trademark rights with respect to smartphones and tablets.

Plaintiff contends its parent retained the rights to use the RCA

trademark on these products; defendants contend that the rights

to use the marks on these products were transferred (see Am.

Compl. ¶¶ 27-36; Answer to RCA Trademark Management S.A.S.'s

First Amended Complaint and Counterclaims of Voxx International

Corporation, f/k/a Audiovox Corporation, and Alvox Trademark

Holding Company LLC, dated June 2, 2914 (Docket Item 59) ¶¶ 1,

79, 93-94).

Plaintiff, RCA Trademark Management S.A.S. ("RCA"), is

a corporation[2] organized under the laws of France that is a

wholly owned subsidiary of another French corporation,

Technicolor S.A. ("Technicolor") (Am. Compl. ¶ 1). Mss. Wahl and

Petit are not employees of RCA; rather, they are employed by

Technicolor. Ms. Wahl is Technicolor's Senior Vice President of

Intellectual Property & Licensing Department and Ms. Petit is

Technicolor's Senior Legal Counsel Trademarks/Domain Names.

Defendants claim that both perform services for RCA which,

according to defendants, is a shell corporation with no substan-

tial staff.

---

[2]RCA is, technically, a société par actions simplifiée and
closely resembles an American limited liability company (Am.
Compl. ¶ 1).

RCA makes two principal arguments in opposition to Voxx's application.  First, it claims that conducting the depositions in the United States would violate the French Blocking statute.  Second, it contends Mss. Wahl and Petit are not officers, directors or managing agents and can, therefore, only be deposed as non-parties and are entitled to the protections afforded to non-parties.  Because Mss. Wahl and Petit are French citizens who reside in France, if they are not officers, directors or managing agents of RCA, they can be deposed only pursuant to the Hague Convention.  Dubai Islamic Bank v. Citibank, N.A., 99 Civ. 1930 (RMB)(THK), 2002 WL 1159699 at *2 (S.D.N.Y. May 31, 2002) (Katz, M.J.), citing United States v. Afram Lines (USA), Ltd., 159 F.R.D. 408, 413 (S.D.N.Y. 1994) (Francis, M.J.) and In re Honda Am. Motor Co., 168 F.R.D. 535, 540 (D. Md. 1996).

RCA first claims that as a matter of comity and in deference to the French "Blocking" statute,[3] Voxx should be

_____

[3]The French Blocking statute, Law No. 80-538 of July 16, 1980, provides:

> Art. I bis - Subject to international or accords and laws and regulations in effect, any individual is prohibited from requesting, seeking or disclosing, in writing, orally, or in any other form, documents or information of an economic, commercial, industrial, financial or technical nature directed toward establishing evidence in view of legal or administrative proceedings abroad or in relation
> (continued...)

required to conduct the depositions pursuant to the Hague Conven-
tion.

I addressed the deference properly due the French

Blocking statute in In re Vivendi Universal, S.A. Sec. Litig.,

supra, 2006 WL 3378115, familiarity with which is assumed, and

concluded there that the statute was not controlling with respect

to documents sought from a non-party witness that were located in

France.   I generally adhere to the opinions expressed in Vivendi.

RCA claims two factors in this case warrant departure from my

decision in Vivendi.   With respect to the issue of hardship, RCA

argues that after I issued my decision in Vivendi, France did

commence at least one criminal prosecution for violation of the

Blocking statute which resulted in an attorney being fined €

10,000.   The case on which RCA is relying -- In re Christopher X,

Appeal No. 07-83228 (Cour de Cassation, Chambre Criminalle Dec.

---

[3] (...continued)
        thereto.

        .   .   .   .

        Art. 3 - Without prejudice to heavier penalties
        set out by law, any violation to [sic] the provisions
        of articles 1 and 1 bis of this law shall be punishable
        by imprisonment of two to six months and a fine of FRF
        10,000 to FRF 120,000 or by either one of these two
        penalties.

In re Vivendi Universal, S.A. Sec. Litig., 02 Civ. 5571
(RJH)(HBP), 2006 WL 3378115 at *1 n.1(S.D.N.Y. Nov. 16, 2006).

12, 2007) -- appears to have involved significantly different facts. Although I have not been provided with a copy of the decision, the case appears to have "involved a French attorney who sought to obtain testimonial evidence for a case pending in a California court by making false statements to a potential witness in France." In re Air Cargo Shipping Servs. Antitrust Litig., 278 F.R.D. 51, 54 (E.D.N.Y. 2010). As I noted in Vivendi, numerous courts in the United States had found that a French company's responding to a discovery request from a United States court did not result in a serious risk of criminal prosecution under the Blocking statute. In re Vivendi Universal, S.A. Sec. Litig., supra, 2006 WL 3378115 at *3-*4. Christopher X has not altered the landscape in that regard. Motorola Credit Corp. v. Uzan, 73 F. Supp. 3d 397, 403 (S.D.N.Y. 2014) (Rakoff, D.J.) ("[I]t appears that when a foreign court orders production of French documents even though the producing party has raised the 'excuse' of the French blocking statute, the French authorities do not, in fact, prosecute or otherwise punish the producing party."); In re Cathode Ray Tube (CRT) Antitrust Litig., MDL No. 1917, 2014 WL 5462496 at *6 (N.D. Cal. Oct. 23, 2014) ("[M]any courts have discounted [the risk of criminal prosecution] in the context of the French Blocking Statute, noting that the Blocking

5

Statute does not subject defendants to a realistic risk of prosecution . . . ." (internal quotations marks omitted)).

RCA's second argument for departing from Vivendi relates to the importance of the information in issue. RCA argues that because this is a breach of contract action, the testimony defendants seek is not of critical importance to the action. This conclusion is not so clear. The contract in issue does not expressly address smartphones and tablets. If RCA has contracts or assignments with other entities containing language similar to the contract in issue here, RCA's interpretation of such other contracts with respect to smartphones and tablets may be highly persuasive. Warner Bros. Inc. v. Curtis Mgmt. Grp., Inc., CV 91-4016-WMB, 1995 WL 420043 at *11 (C.D. Cal. Mar. 31, 1993); Cibro Petroleum Prods., Inc. v. Sohio Alaska Petroleum Co., 602 F. Supp. 1520, 1551 (N.D.N.Y. 1985), aff'd, 798 F.2d 1421 (2d Cir. 1986).

The second issue -- whether either Ms. Wahl or Ms. Petit qualifies as an officer, director or managing agent -- is somewhat more complicated. During a conference call with counsel on August 11, 2015, counsel for RCA was unable to state whether RCA had officers or directors and, if so, their identities. Thus, it really is not known at this point whether Ms. Wahl or Ms. Petit are officers or directors of RCA. In addition, the

6

facts concerning their possible status as managing agents are not well developed.

The standards for assessing whether an individual is a managing agent were comprehensively set forth by the Honorable Theodore H. Katz, United States Magistrate Judge (now retired), in Dubai Islamic Bank v. Citibank, N.A., supra, 2002 WL 1159699 at *2-*3:

> "The test for a managing agent is not formulaic." Boss Mfg. Co. v. Hugo Boss AG, No. 97 Civ. 8495 (SHS)(MHD), 1999 WL 20828, at *3 (S.D.N.Y. Jan. 13, 1999). Rather, the question of whether a person is a managing agent, and therefore subject to a notice of deposition, is answered pragmatically and on a fact-specific basis. See 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2103, at 39 (2d ed. 1994); see also Afram Lines, 159 F.R.D. at 413 ("Because of the vast variety of factual circumstances to which the concept must be applied, the standard . . . remains a func-tional one to be determined largely on a case-by-case basis.") (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir. 1986) (citation omitted)). "The term 'man-aging agent' should not be given too literal an inter-pretation," Tomingas v. Douglas Aircraft Co., 45 F.R.D. 94, 96 (S.D.N.Y. 1968), and "[a]s in all matters apper-taining to discovery, it is the ends of justice that are to be served." Church of Scientology, 802 F.2d at 1453.

> With these principles in mind, courts in this district have generally considered five factors in determining whether an individual is a managing agent:

> > 1) whether the individual is invested with general powers allowing him to exercise judgment and dis-cretion in corporate matters; 2) whether the indi-vidual can be relied upon to give testimony, at

7

his employer's request, in response to the demands of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; 4) the general responsibilities of the individual respecting the matters involved in the litigation; and 5) whether the individual can be expected to identify with the interests of the corporation.

Sugarhill Records, 105 F.R.D. at 170 (internal quotations and citations omitted); accord Afram Lines, 159 F.R.D. at 413; Zurich Ins. Co. v. Essex Crane Rental Corp., No. 90 Civ. 2263 (SWK)(JCF), 1991 WL 12133, at *1 (S.D.N.Y. Jan. 29, 1991); see also Boss Mfg., 1999 WL 20828, at *3 (recognizing that although the number of factors generally considered by courts ranges from three to five, courts in this district have considered the five factors listed above).

Accord Telephone Sys. v. Cecil, 02 Civ. 9315 (GBD)(RLE), 2004 WL 48879 at *2 (S.D.N.Y. Jan. 9, 2004) (Ellis, M.J.); see also In re Manor Inv. Co., 43 F.R.D. 299, 300-01 (S.D.N.Y. 1967) (Weinfeld, D.J.) (defining "managing agent"); Indep. Prods. Corp. v. Loew's, Inc., 24 F.R.D. 19, 24-26 (S.D.N.Y. 1959) (Sugarman, D.J.) (same); Rubin v. Gen. Tire & Rubber Co., 18 F.R.D. 51, 55-56 (S.D.N.Y. 1955) (Palmieri, D.J.) (same); Krauss v. Erie R.R. Co., 16 F.R.D. 126, 127 (S.D.N.Y. 1954) (Weinfeld, D.J.) (same). An individual need not be an employee of a corporation or other entity in order to be a managing agent. Schindler Elevator Corp. v. Otis Elevator Co., 06 Civ. 5377 (CM)(THK), 2007 WL 1771509 at *3 (S.D.N.Y. June 18, 2007) (Katz, M.J.)

8

The party asserting that an individual is a managing agent bears the burden of proving this proposition. Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (S.D.N.Y. 1985) (Kram, D.J.). The burden, however, is a modest one because the issue usually arises before substantial discovery has been conducted. See Boss Mfg. Co. v. Hugo Boss AG, 97 Civ. 8495 (SHS)(MHD), 1999 WL 20828 at *4 (S.D.N.Y. Jan. 13, 1999) (Dolinger, M.J.); United States v. Afram Lines (USA), Ltd., supra, 159 F.R.D. at 414. Magistrate Judge Katz has suggested that "the examining party satisfies its burden when it produces enough evidence to show that there is at least a close question whether the proposed deponent is the managing agent. This approach permits discovery to proceed, while deferring until trial the ultimate question of whether the witness's testimony is binding on the corporation." Dubai Islamic Bank v. Citibank, N.A., supra, 2002 WL 1159699 at *4 (internal quotation marks & citations omitted). See also Tomingas v. Douglas Aircraft Co., 45 F.R.D. 94, 97 (S.D.N.Y. 1968) (Tenney, D.J.) ("Although the characterization of these two proposed deponents as 'managing agents' is not free from doubt, whatever doubt remains should be resolved in favor of the examining party in that the ultimate determination as to whether the defendant herein shall be bound

by [their] testimony . . . is to be made by the trial court."
(internal quotation marks & citations omitted)).

Most aspects of the managing agent "test" are addressed
in defendants' counsel's letter dated July 22, 2015, and, for the
most part, plaintiff has not controverted defendants' conten-
tions.  However, there really is a gap in the record concerning
the responsibilities of Mss. Wahl and Petit with respect to the
matters involved in the litigation.  Although I had initially
thought the record was sufficient for me to resolve the dispute,
upon further consideration I conclude that that determination may
have been too hasty.

Accordingly, no later than August 21, 2015, RCA is to
submit an affidavit or affirmation describing Mss. Wahl and
Petit's responsibilities, if any, with respect to the licensing
or other methods used to monetize RCA's trademarks.  The affirma-
tions should identify, for the last five years, the number of and
nature of the transactions involving RCA's trademarks in which
Mss. Wahl or Petit have participated, the name and title of any
other Technicolor or RCA employees or agents participating in the
transactions, the roles that Mss. Wahl and Petit played in these
transaction in comparison to the roles played by any other
Technicolor or RCA employees or agents, the approximate percent

10

of working hours that Mss. Wahl and Ms. Petit spend on RCA

matters and any other facts that plaintiff deems relevant.

   I am not setting a date for a further responsive

submission from Voxx at this time.  A further submission from

Voxx may not be necessary after I consider RCA's submission.

Dated: New York, New York
    August 13, 2015

          SO ORDERED


          HENRY PITTMAN
          United States Magistrate Judge

Copies transmitted to:

All Counsel