UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

RCA TRADEMARK MANAGEMENT S.A.S.,

                    Plaintiff,

        -against-                       No. 14CV6294-LTS-HBP

VOXX INTERNATIONAL CORP. et al.,

                  Defendants.
-----------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiff RCA Trademark Management S.A.S. ("RCA," "Plaintiff," or

"Counterclaim-Defendant"), has brought suit against Defendants VOXX International Corp.,

Alvox Trademark Holding Company, LLC (collectively "VOXX," or "Counterclaim-

Plaintiffs")[1] and VOXX Accessories Corp. (collectively "Defendants"), alleging claims for

breach of contract, unjust enrichment and indemnification, as well as trademark infringement,

counterfeiting and unfair competition and false designation of origin pursuant to the Lanham

Act.[2]  VOXX has alleged 16 counterclaims against RCA, including: breach of contract; Lanham

Act trademark infringement, unfair competition and false designation of origin, dilution and

counterfeiting; trademark dilution under New York state law; deceptive business practices

---

[1]    VOXX Accessories Corp. is a Defendant in the action filed by RCA, but has not
asserted claims as a Counterclaim-Plaintiff, and therefore is not a party to the present
motion.

[2]    The initial Complaint in this action was filed on January 21, 2014, in the Southern
District of Indiana (see Docket Entry No. 1), and an Amended Complaint was filed on
May 15, 2014.  (See Docket Entry No. 53.)  The action was subsequently transferred
to the Southern District of New York on August 8, 2014.  (See Docket Entry No. 74.)

pursuant to New York General Business Law ("NY GBL") § 349; false advertising pursuant to New York General Business Law § 350; common law unfair competition; unjust enrichment; partial cancellation of certain of RCA's marks; and for an injunction requiring RCA to abandon certain trademark applications.  VOXX also seeks a declaration of non-infringement.  Both RCA's claims and VOXX's counterclaims arise from a series of agreements entered into between the parties in which RCA assigned to VOXX the rights to use certain RCA trademarks in connection with certain audiovisual products and accessories.

RCA has moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal of VOXX's counterclaims for deceptive business practices pursuant to NY GBL § 349 (Counterclaim Eleven), false advertising pursuant to NY GBL § 350 (Counterclaim Twelve), common law unfair competition (Counterclaim Thirteen) and unjust enrichment (Counterclaim Fourteen), for failure to state a claim upon which relief may be granted.[3]  The Court has considered the parties' submissions carefully.  For the reasons stated below, the Court grants RCA's motion in its entirety.

---

[3]     This motion was originally filed on May 7, 2014, in the Southern District of Indiana.  (See Docket Entry No. 42.)  The motion was terminated upon the case's transfer to the Southern District of New York, and was reinstated by this Court on December 12, 2014.  (See Docket Entry No. 88.)  The motion was taken on submission, and has been decided based on the papers filed in the Southern District of Indiana.

BACKGROUND[4]

On or about December 20, 2006, Thomson S.A. ("Thomson"), the parent

company of RCA Trademark Management, and Audiovox entered into a purchasing agreement.

(Counterclaims ¶ 7.)  This agreement (the "Accessory Purchase Agreement") transferred

ownership of certain assets and business entities from Thomson to Audiovox.  (Counterclaims

¶ 7.)  Audiovox thereafter changed its name to VOXX.  (Id. ¶ 8.)  In connection with the

Accessory Purchase Agreement, RCA allegedly transferred to VOXX all right, title and interest

in and to certain RCA word and design marks for specific accessory products, pursuant to an

"Accessory Assignment Agreement" dated January 29, 2007.  (Id. ¶ 11.)  Under the terms of the

Accessory Assignment Agreement, VOXX received all right, title and interest in certain

"transferred marks" with respect to "all Accessory Products," while RCA retained rights in

certain "retained marks" with respect to "all goods and services other than Accessories

Products."  (Id. ¶¶ 12-13, emphasis added.)  The Accessory Assignment Agreement defines the

specific products categorized as "Accessory Products," as well as those specifically excluded

from that category.  (See id. ¶¶ 15-16.)  The parties to the Accessory Assignment Agreement

also agreed that their respective rights in both the transferred and retained marks were subject to

a trademark coexistence agreement.  (Id. ¶ 17.)

On or about October 14, 2007, Thomson transferred ownership of certain

audio/video assets and business entities to Audiovox through a purchase agreement between the

parties (the "AV Purchase Agreement").  (Id. ¶ 19.)  Under the terms of the AV Purchase

Agreement, Thomson and VOXX agreed that they, or their subsidiaries, would enter into both a

---

[4]     The facts recited herein are drawn from Defendants' Answer and Counterclaims to
Plaintiff's Amended Complaint ("Counterclaims") filed in this action.  (See Docket
Entry No. 59.)

trademark assignment agreement and a trademark coexistence agreement.  (Counterclaims ¶ 21.)  In this connection, RCA is alleged to have irrevocably transferred, conveyed and assigned to VOXX all right, title and interest in certain marks for specified AV products pursuant to a trademark assignment agreement (the "AV Assignment Agreement") dated December 31, 2007.  (See id. ¶ 23.)  VOXX claims that, once again, it received right, title and interest in certain "transferred marks," while the rights to certain "retained marks" were retained by RCA. (Id. ¶ 24.)  Like the Accessory Assignment Agreement, the AV Assignment Agreement explicitly defines both transferred and retained marks (see id. ¶ 25), as well as the types of products the parties agreed to categorize as AV products, and those specifically excluded from that category.  (See id. ¶¶ 27-28.)  The parties further agreed that their respective rights in the transferred and retained marks were subject to a trademark coexistence agreement. (Id. ¶ 29.)

In connection with both the Accessory Purchase Agreement and the AV Purchase Agreement, VOXX and Thomson entered into a "Trademark Coexistence Agreement" on January 29, 2007, which was later amended on December 31, 2007.  (See id. ¶¶ 31-32.) Pursuant to the terms of this agreement, RCA allegedly agreed not to challenge VOXX's right and title to any "transferred marks," or to represent that RCA retained any title to or ownership of those marks.  (Id. ¶ 34.)  RCA and Thomson also allegedly agreed to restrictions respecting their rights to register marks incorporating the letter string "RCA" in connection with both AV products and accessories (id. ¶ 35), as well as their rights to manufacture, market or sell certain types of goods using RCA marks (id. ¶ 36) and their rights generally to engage in the "[a]ccessory [p]roduct business" using an RCA mark.  (Id. ¶ 37.)  The parties further agreed not to engage in any actions which might adversely impact the value of any of the transferred

marks.  (Counterclaims ¶ 38).  RCA also pledged that, prior to making any attempt to register a mark "reasonably related" to AV or accessories products, it would first provide VOXX with notice of its intent to do so.  (Id. ¶ 40.)

In January 2008, VOXX assigned its right, title and interest in the transferred RCA AV marks (in connection with AV products) to Alvox Trademark Holding Company, LLC, which is under common control with VOXX.  (Id. ¶ 42.)  The Counterclaim-Plaintiffs assert that VOXX has continuously used RCA marks in connection with accessory products since January 2007 to the present, while Alvox has used RCA marks in connection with AV products since January 2008 to the present.  (Id. ¶ 44.)  Counterclaim-Plaintiffs further claim that these marks are "some of the most well-known symbols of high-quality consumer electronic accessories products in the world," (id. ¶ 47), and that, through extensive sales, marketing and exclusive use of these marks, they have developed goodwill in both the United States and around the world.  (Id. ¶ 48.)  The marks are "featured prominently in the advertising and promotion of" both accessory products and AV products, and are "highly visible and distinctive symbols of excellence in quality."  (Id. ¶ 51.)

Counterclaim-Plaintiffs allege, upon information and belief, that RCA thereafter entered into licensing agreements with Atomi, Inc. ("Atomi"), Radio Victoria of Argentina ("Radio Victoria"), and Alco Electronics Ltd. ("Alco"), in breach of Counterclaim-Plaintiffs' exclusive rights to certain transferred RCA marks.  (See generally id. ¶¶ 57-80.)  Counterclaim-Plaintiffs claim that these breaches have caused "irrevocabl[e]" harm to VOXX and created consumer confusion.  (See id. ¶¶ 63-64, 72-73.)  Counterclaim-Plaintiffs further allege that, from on or about April 27, 2012, through at least January 7, 2013, RCA filed trademark applications with the United States Patent and Trademark Office for the use of RCA marks with

respect to certain types of goods without first providing VOXX with notice of its intent to register such marks, running afoul of the Trademark Coexistence Agreement.  (See Counterclaims ¶¶ 81-82.)

DISCUSSION

Legal Standard

When deciding a Rule 12(b)(6) motion to dismiss a counterclaim for failure to state a claim upon which relief may be granted, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the counterclaim-plaintiff.  See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).  A court is not required, however, to accept "conclusory statements" made by the counterclaim-plaintiff as true, nor do "legal conclusion[s] couched as factual allegation[s]" merit such deference.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 2007).  In order to survive a motion to dismiss, "a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the [counterclaim-]plaintiff pleads factual content that allows the court to draw the reasonable inference that the [counterclaim-] defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  If the counterclaim-plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  Twombly, 550 U.S. at 570.

Counterclaims Eleven and Twelve: Deceptive Business Practices Under New York General
<u>Business Law § 349 and False Advertising Under New York General Business Law § 350</u>

   "A plaintiff challenging an act or practice under [NY GBL] section 349 must show that: '(1) defendant engaged in a consumer-oriented act, (2) that the consumer-oriented act was misleading in a material way, and (3) that plaintiff consequently suffered injury.'" <u>Burberry Ltd. v. Euro Moda Inc.</u>, No. 08CV5781-CM, 2009 WL 1675080, at *16 (S.D.N.Y. June 10, 2009) (quoting <u>GTFM, Inc. v. Solid Clothing, Inc.</u>, 215 F. Supp. 2d 273, 301-02 (S.D.N.Y. 2002)).  The type of violation generally contemplated by the statute "involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." <u>Gottlieb Dev., LLC v. Paramount Pictures Corp.</u>, 590 F. Supp. 2d 625, 636 (S.D.N.Y. 2008) (internal citation omitted).  However, NY GBL § 349 claims are not limited to private citizens, as "[c]orporate competitors may bring a claim under this statute 'so long as some harm to the public at large is at issue.'" <u>DO Denim, LLC v. Fried Denim, Inc.</u>, 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) (quoting <u>Securitron Magnalock Corp. v. Schnabolk</u>, 65 F.3d 256, 264 (2d Cir.1995)).  Indeed, " [t]he critical question . . . is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor." <u>Securitron Magnalock</u>, 65 F.3d at 264.  Claims for false advertising under NY GBL § 350 are subject to the same standard. <u>See</u>, <u>e.g.</u>, <u>Princeton Graphics Operating, L.P. v. NEC Home Electronics (U.S.A.), Inc.</u>, 732 F. Supp. 1258, 1267 (S.D.N.Y. 1990) (holding that a business competitor may assert a § 350 claims so long as "the nature of the claim asserted directly affects the interests of consumers.").

   Under New York law, claims involving trademark violations are not cognizable under NY GBL §§ 349 or 350 unless "there is a specific and substantial injury to the public

interest over and above ordinary trademark infringement or dilution." Coach, Inc. v. Horizon Trading USA Inc., 908 F. Supp. 2d 426, 435 (S.D.N.Y. 2012) (internal quotation marks and citations omitted). See also Perkins School for the Blind v. Maxi-Aids, Inc., 274 F. Supp. 2d 319, 327 (E.D.N.Y. 2003) ("[b]ecause sections 349 and 350 are consumer protection statutes, a plaintiff may state a claim under these statutes only if it asserts consumer injury or harm to the public interest") (internal quotation marks and citation omitted).  To properly state a claim under either of these provisions, the plaintiff must allege conduct that has "significant ramifications for the public at large." Gucci America, Inc. v. Duty Free Apparel, Ltd., 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003).  "Claims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, both constitute situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements," necessary to survive a Rule 12(b)(6) motion.  See Gucci America, 277 F. Supp. 2d at 273.

Courts have generally held that the type of injury needed to sustain a trademark violation under these provisions is limited to one "that would trigger Federal Trade Commission intervention under 15 U.S.C. § 45, such as potential danger to the public health or safety." DO Denim, 634 F. Supp. 2d at 409 (internal quotation marks and citation omitted).  For example, in Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris USA, Inc., the Second Circuit confirmed that a corporate health insurance company had standing to bring a NY GBL § 349 claim against tobacco companies where the allegedly deceptive business practice of the tobacco companies "induced consumers to smoke and discouraged them from quitting smoking, thus

significantly increasing their risk of illness and even death."  344 F.3d 211, 218 (2d Cir. 2003).[5]

        Counterclaim-Plaintiffs have failed to sufficiently allege the public harm

necessary to sustain their NY GBL §§ 349 and 350 claims.  Counterclaim-Plaintiffs' allegations

of harm consist only of assertions that "RCA Trademark Management's acts have caused harm

to the public," that "RCA Trademark Management's false and misleading representations of

fact and conduct have influenced the purchasing decisions of the public," and that "VOXX

suffered and will continue to suffer damage to its business, reputation and goodwill."  (See

Counterclaims ¶¶ 165-66, 173.)  Such conclusory assertions of harm fail the threshold pleading

requirements of Federal Rule 8.2 as set forth in Twombly.  Furthermore, VOXX identifies no

harm to the public "over and above ordinary trademark infringement or dilution," Coach, 908 F.

Supp. 2d at 435, and pleads no facts from which this Court may infer that the "core" of its

claims is harm to the consuming public rather than harm to its own business interests.  See

Gucci America, 277 F. Supp. 2d at 273.  Such facially deficient allegations cannot survive

RCA's Rule 12(b)(6) motion.  Thus, "[b]ecause the complaint fails to identify the requisite

harm to consumers or the public interest, the [counterclaim-]plaintiff's deceptive acts and false

advertising claims pursuant to sections 349 and 350 in Count[s Eleven and Twelve] are

---

[5]      Similarly, courts have held that the requisite public harm is implicated when the product at issue is "an ingestible product that contains illegal substances."  EFS Marketing, Inc. v. Russ Berrie & Co., Inc., 836 F. Sup.. 128, 137 (S.D.N.Y. 1993) (vacated in part on other grounds).  However, claims involving "the alleged use of confusing labels in the manufacture of women's coats" (DePinto v. Ashley Scott, Inc., 222 A.D.2d 288, 289 (N.Y. App. Div., 1st Dep't 1995)), or the publication of potentially confusingly similar magazines (Sports Traveler, Inc v. Advance Magazine Publishers, Inc., No. 96CV5150-JFK, 1997 WL 137443, at *3 (S.D.N.Y. Mar. 24, 1997)) have been found to fall short of the standards for maintaining trademark actions under NY GBL §§ 349 and 350.

dismissed." <u>Perkins School for the Blind</u>, 274 F. Supp. 2d at 327.[6]

VOXX contends that, because it has sufficiently pleaded that RCA engaged in the sale of counterfeit goods, its Counterclaims necessarily allege "a level of public harm beyond trademark infringement." (<u>See</u> VOXX Memo at p. 6.) The Court does not agree. The cases cited by VOXX in support of this theory are reflective of a minority view that has been rejected by other courts. <u>See</u>, <u>e.g.</u>, <u>Coach</u> 908 F. Supp. 2d at 435-36 (holding that production of counterfeit goods resulting in confusion and deception of the consuming public does not meet the public harm requirement of NY GBL §§ 349 and 350, and cases cited therein). As RCA notes, the cases cited by VOXX in support of this argument do not provide any explanation as to why the "public harm" implicated by counterfeiting is any more severe than that which would be implicated by any other alleged trademark violation.

Furthermore, even if the Court were to accept VOXX's counterfeiting argument, its allegations of harm are still plainly deficient. Courts have held that a party's "claim that consumers will be confused, on its own, does not meet the threshold for liability" under NY GBL §§ 349 and 350. <u>Philip Morris USA, Inc. v. U.S. Sun Star Trading, Inc.</u>, No. 08CV0068-KAM-JO, 2010 WL 2133937, at *6-7 (E.D.N.Y. Mar. 11, 2010) (Report and Recommendation

---

[6]     VOXX contends that dismissal of these claims is premature at this stage because the standards for analyzing its NY GBL §§ 349 and 350 counterclaims are similar to those the Court would use in analyzing its Lanham Act counterclaims and, therefore, all of these claims should be analyzed together. (<u>See</u> Memorandum of Law of Counterclaim Plaintiffs in Opposition to RCA Trademark Management S.A.S.'s Motion to Dismiss Counts 11 Through 14 ("VOXX Memo"), at p. 10.) While it is true that there may be factual and analytical overlap between VOXX's NY GBL §§ 349 and 350 and Lanham Act counterclaims, VOXX's pleadings with respect to its NY GBL §§ 349 and 350 counterclaims are facially deficient and fail to meet the requirements of <u>Twombly</u>. Thus, any potential overlap between these sets of counterclaims is immaterial, and is not enough to save VOXX's NY GBL §§ 349 and 350 counterclaims from dismissal.

adopted by <u>Philip Morris USA, Inc. v. U.S. Sun Star Trading, Inc.</u>, No. 08CV0068-KAM-JO,

2010 WL 2160028 (E.D.N.Y. May 27, 2010)).  With respect to VOXX's NY GBL § 350 false

advertising counterclaim, the harm it alleges is "damage to its business, reputation and

goodwill."  (<u>See</u> Counterclaims ¶ 173.)  Plainly, the "core of [that] claim is harm to [its]

business as opposed to consumers," which renders it insufficient.  <u>See</u> <u>Gucci America</u>, 277 F.

Supp. 2d at 273.  With respect to its NY GBL § 349 deceptive practices counterclaim, VOXX

states conclusorily that "RCA Trademark Management's acts have caused harm to the public"

and that "RCA Trademark Management's false and misleading representations of fact and

conduct have influenced the purchasing decisions of the public," (<u>See</u> Counterclaims ¶¶ 165-

66), but fails to indicate with any particularity the harm or negative impact, beyond some

potential consumer confusion, that RCA's actions have precipitated.  Thus, VOXX has failed to

sufficiently plead viable claims under NY GBL §§ 349 and 350, and Counts Eleven and Twelve

of its Counterclaims will be dismissed.


<u>Counterclaim Thirteen: Common Law Unfair Competition</u>

VOXX further alleges that RCA engaged in unfair competition under New York

law through its licensing of certain marks to Atomi and Radio Victoria.  (<u>See</u> Counterclaims ¶¶

175-181.)  "To prevail on a New York unfair competition claim, a plaintiff must show either

actual confusion or a likelihood of confusion, and there must be some showing of bad faith on

the part of the defendants."  <u>Sly Magazine, LLC v. Weider Publications L.L.C.</u>, 346 F. App'x

721, 723 (2d Cir. 2009) (internal quotation marks and citation omitted).  "It is well-settled,

however, that no claim [for unfair competition] lies where its underlying allegations are merely

a restatement, albeit in slightly different language, of the 'implied' contractual obligations

asserted in the cause of action for breach of contract."  Orange County Choppers, Inc. v. Olaes Enterprises, Inc., 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).  Indeed, the New York Court of Appeals has made it clear that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."  Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389 (1987).

In Orange County Choppers, the counterclaim-defendant had contracted with the counterclaim-plaintiff, granting the counterclaim-plaintiff the exclusive rights to use certain marks on specific products.  The counterclaim-defendant later licensed those same rights to third parties and the counterclaim-plaintiff sued, asserting both breach of contract and common law unfair competition counterclaims.  The court held that the unfair competition counterclaim must be dismissed because as duplicative of the breach of contract counterclaim.  An analogous scenario presents itself in the instant case.  VOXX argues that its claim is distinguishable from that rejected in Orange County Choppers because its contract is an assignment agreement rather than a licensing agreement.  VOXX proffers no pertinent legal authority for the materiality of such a distinction.  As in Orange County Choppers, VOXX's only basis for the claim that it has been wronged is the contractual relationship granting it the right to use RCA trademarks.  Absent that contractual right, it would have no claim at all to use of the trademarks and no legal ground for complaint regarding RCA's licensing of the trademarks to others.  VOXX's rights to the use of the RCA marks are, indisputably, the product of the series of agreements entered into between the parties, and VOXX has alleged no facts from which the Court might infer that RCA owed VOXX any "independent legal duty other than its duty to comply with its . . . obligations under the[se] [a]greements."  See Dorset Industries, Inc. v. Unified Grocers, Inc., 893 F. Supp.

2d 395, 414 (E.D.N.Y. 2012).  Therefore, the Court will dismiss the unfair competition

counterclaim asserted in Count Thirteen of VOXX's Counterclaims as duplicative of its breach

of contract counterclaims.[7]


Counterclaim Fourteen: Unjust Enrichment

             VOXX asserts that RCA was unjustly enriched when it licensed to Atomi and

Radio Victoria marks that had previously been transferred to VOXX.  (See Counterclaims ¶

183.)  "Under New York law, quantum meruit, unjust enrichment, and promissory estoppel are

all considered quasi-contract claims."  Harrison v. Toptani Law Offices, No. 11CV6801-LTS-

RLE, 2012 WL 694755, at *2 (S.D.N.Y. Mar. 2, 2012) (internal citations omitted).

Furthermore, it is well settled that "[q]uasi-contract claims must be dismissed where there

undisputedly exists a valid written agreement, the scope of which clearly covers the

quasi-contractual dispute between the parties."  Tierney v. Omnicom Group, Inc., 06CV14302-

LTS-THK, 2007 WL 4526615, at *3 (S.D.N.Y. Dec. 20, 2007) (quoting Beth Israel Med. Ctr. v.

Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F .3d 573, 587 (2d Cir. 2006)).  The New

York Court of Appeals has noted that "[t]he existence of a valid and enforceable written

contract governing a particular subject matter ordinarily precludes recovery in quasi contract for

events arising out of the same subject matter."  Clark Fitzpatrick, 70 N.Y.2d at 656.

             VOXX argues that "the scope, enforceability and applicability of the relevant

agreements have not been conceded by the parties or determined by the court" and, therefore,

---

[7]      VOXX again argues that dismissal would be premature here because "the New York
standard for unfair competition mirrors the Lanham Act and should be considered
along with the federal Lanham Act claims."  (See VOXX Memo at p. 13.)  VOXX has
cited no persuasive case law in support of this proposition.  Because Count Thirteen of
VOXX's Counterclaims is facially deficient, it must be dismissed.  See supra note 6.

that its cause of action for unjust enrichment should proceed in tandem with its beach of

contract claims.  (See VOXX Memo at pp. 15-16.)  While it is true that, "where there is a bona

fide dispute as to the existence of a contract or where the contract does not cover the dispute in

issue, plaintiff may proceed upon a theory" of recovery in quasi-contract (see Joseph Sternberg,

Inc. v. Walber 36 St. Assocs., 187 A.D.2d 225, 228 (N.Y. App. Div., 1st Dep't 1993), no such

scenario exists here.  Neither party has contested the existence or validity of the controlling

agreements.  Indeed, VOXX repeatedly alleges that the assignment agreements are valid and

binding on the parties.  (See Counterclaims ¶¶ 84, 91, 96, 108, 121.)  VOXX is therefore left to

argue that the "scope of these agreements and whether the relationship between all parties is

adequately defined by these agreements is in sharp dispute at the time."  (See VOXX Memo at

p. 15.)  While this may be true, it is readily apparent that this dispute falls within the scope of

the parties' agreements.  As RCA points out, VOXX would have no rights in RCA trademarks

but for the series of assignment agreements between the parties, and RCA would have

obligation to refrain from licensing those marks in the absence of those agreements.  VOXX's

claims necessarily spring from the existence of the contracts between the parties, and the central

question underlying the case – namely, whether marks that RCA licensed to third parties were

marks retained by RCA or transferred to VOXX – is one of contractual interpretation.  VOXX's

counterclaim for unjust enrichment clearly "aris[es] out of the same subject matter" as its

claims for breach of contract.  (Compare Counterclaims ¶¶ 107-131 with ¶¶ 182-83).  Thus,

because there is no dispute as to the existence, validity or applicability of the contracts to

VOXX's counterclaims, its counterclaim for unjust enrichment must be dismissed.

VOXX's Request for Leave to Amend

    In its opposition papers, VOXX requests an opportunity to amend its Counterclaims in the event any are dismissed.  Because this motion was briefed prior to the transfer of the case to this Court, the parties were not on notice of the undersigned's Individual Practices Rules requiring pre-motion consultation and consideration of amendments in response to a contemplated motion, nor of the provision of those rules requiring a non-moving party to choose between requesting leave to amend prior to interposing opposition and opposing the motion with no further opportunity for leave to amend.  Accordingly, although the legal basis of the Court's decision appears likely to render futile an application to amend, the Court will permit VOXX to move for leave to amend the dismissed counterclaims.  The motion must be filed within 28 days of the entry of this Memorandum Opinion and Order, and must be accompanied by a proposed amended Answer and Counterclaims and a memorandum of law explaining the legal sufficiency of the proffered amended counterclaims.  Any opposition to the motion must be filed within 14 days thereafter, and any reply may be filed within 7 days after the opposition is filed.  Courtesy copies must be provided for Chambers at the time of filing.  The motion will be taken on submission.

<u>CONCLUSION</u>

For the foregoing reasons, the Court grants RCA's motion to dismiss Counts Eleven through Fourteen of VOXX's Counterclaims in their entirety.

The Court further grants VOXX permission to move to file an Amended Answer and Counterclaims within 28 days of the entry of this Memorandum Opinion and Order.  The motion must meet the procedural specifications, and be filed on the schedule, set forth in the preceding paragraph of this Memorandum Opinion and Order.  Any future motion practice must be compliant with the undersigned's Individual Practices and Rules, which are available on the Court's website.

SO ORDERED.


Dated: New York, New York
        August 24, 2015

                                        ___/s/  Laura Taylor Swain___
                                        LAURA TAYLOR SWAIN
                                        United States District Judge