UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RCA TRADEMARK MANAGEMENT S.A.S.,

        Plaintiff,

-v-                                      No. 14 CV 6294-LTS-HBP

VOXX INTERNATIONAL GROUP. et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

        Plaintiff RCA Trademark Management S.A.S. ("RCA" or "Plaintiff") has brought suit against Defendants VOXX International Corp. f/k/a Audiovox Corporation ("VOXX Int'l"), Alvox Trademark Holding Company, LLC ("Alvox" and, collectively "VOXX") and VOXX Accessories Corp.,[1] asserting trademark infringement, breach of contract and related claims. The dispute centers on the scope of certain trademark assignments by RCA to VOXX Int'l under a series of agreements and, specifically, whether the assignments covered smartphones, tablet computers, and accessory products.[2] VOXX has asserted sixteen counterclaims against RCA, including one seeking a declaration of non-infringement as to VOXX's use and distribution of RCA marks in connection with tablets, smartphones and related accessories ("Second

---

[1] VOXX Accessories Corp. is a Defendant in the action filed by RCA, but has not asserted counterclaims, and therefore is not a party to the present motion practice.

[2] VOXX Int'l subsequently assigned certain of the RCA trademarks to Alvox. The initial Complaint in this action was filed on January 21, 2014, in the Southern District of Indiana (see docket entry no. 1), and an Amended Complaint was filed on May 15, 2014, (see docket entry no. 53). The action was transferred to the Southern District of New York on August 8, 2014. (See Docket entry no. 74.)

Counterclaim").[3]  RCA and VOXX have each moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on VOXX's Second Counterclaim.  Each seeks a declaration of rights concerning the use of the RCA trademarks in connection with the disputed products.  VOXX, in the alternative, has requested additional discovery pursuant to Federal Rule of Civil Procedure 56(d).

The Court has jurisdiction of this action pursuant to 18 U.S.C. §§ 1331 and 1367.  The Court has considered the parties' submissions carefully.  For the reasons that follow, the Court grants in part RCA's motion for partial summary judgment, denies VOXX's motion for partial summary judgment, and denies VOXX's motion for additional discovery under Rule 56(d).

BACKGROUND

Except as otherwise indicated, the following facts are undisputed.[4]

In December 2006, VOXX Int'l agreed to purchase a consumer electronics accessory business from RCA's parent company, Technicolor S.A. f/k/a Thomson S.A. ("Technicolor" or "Thomson").  (RCA 56.1 St. ¶ 1.)  In conjunction with that transaction, RCA and VOXX Int'l entered into a trademark assignment agreement under which RCA assigned its rights, title, and interest in certain "Transferred Marks" to VOXX Int'l (the "Accessory

---

[3]  On August 24, 2015, the Court issued an memorandum opinion and order dismissing four of VOXX's counterclaims.  (Docket entry no. 129.)

[4]  Facts recited are drawn primarily from the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1, or from evidence as to which there is no non-conclusory contrary factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 Statements ("RCA 56.1 St." or "VOXX 56.1 St.") incorporate by reference the parties' citations to the underlying evidentiary submissions.

Assignment Agreement"). (Id.) The Accessory Assignment Agreement, in pertinent part, defines "Transferred Marks" as "the RCA Marks solely with respect to all Accessory Products." (Accessory Assignment Agreement § 1.1(p), docket entry no. 3-1.) "Accessory Products" are defined as "finished goods generally recognized in the consumer electronics industry, now or in the future, as consumer electronic accessories, including: [list of specific products]; and (n) any other consumer electronic accessories, in the form of finished goods, previously researched, developed, produced, sold or marketed by the Business." (Id. Ex. 2.)

   The Accessory Assignment Agreement carved out a set of "Excluded Products" from the definition of "Accessory Products":

> Notwithstanding anything in this Agreement to the contrary, 'Excluded Products' mean (and Accessory Products shall not include) any of the following (including items whether existing now or in the future):
>
> . . .
>
> (d) accessories, other than headsets, designed or marketed for use in conjunction with any cellular, satellite or other mobile telephone (other than corded and cordless telephones);
>
> . . .

(Id. (emphasis added).) VOXX "acknowledg[d] and agree[d] that all right, title and interest" in the "Retained Marks," defined as "the RCA Marks solely with respect to all goods and services other than Accessory Products," were reserved and owned by RCA. (Id. §§ 1.1(m), 3.)

   In October 2007, VOXX Int'l separately agreed to purchase a consumer electronics audio-video business from Technicolor. (RCA 56.1 St. ¶ 6.) In conjunction with this transaction, RCA and VOXX Int'l entered into a trademark assignment agreement under which RCA assigned its right, title, and interest in additional "Transferred Marks" to VOXX Int'l (the "AV Assignment Agreement," § 2, docket entry no. 5-1.) The AV Assignment Agreement

defined "Transferred Marks" as "the RCA Marks solely with respect to all AV Products."  (Id. § 1.1(v).)  "Retained Marks" were defined, in pertinent part, as "the RCA Marks solely with respect to all goods and services other than AV Products."  (Id. § 1.1(s).)  VOXX Int'l "acknowledge[d] and agree[d] that all right, title and interest in the Retained Marks [was] reserved and owned by [RCA]."  (Id. § 3.1.)

> Like the Accessory Assignment Agreement, the AV Assignment Agreement defined the broad category of covered "AV Products" and carved out certain "Excluded Products" from that definition:

> 'AV Products' means finished goods generally recognized in the consumer electronics industry, now or in the future, as consumer electronic audio and/or video products; except that AV Products shall not include any Excluded Products. AV Products shall include the following, each in the form of a finished good and provided that, in each case, such products are not Excluded Products: [list of specified products], any products which are combinations of the foregoing, any products which are subsequent to the closing date generally considered to be derivative or extension products of the foregoing or their combinations, and any products currently being researched, developed and/or sold by the existing AV Business as of the Closing Date.

> . . .

> 'Excluded Product' means any of the following:

> . . .

> (d) mobile, corded and cordless telephones, VoIP products and any other product that includes telephonic or voice communication technology or features;

>  . . .

(Id. Ex. 2 (emphasis added).)

> On or about December 31, 2007, VOXX Int'l entered into an Amended and Restated Trademark Coexistence Agreement (the "Coexistence Agreement") with RCA's then-parent company, Thomson.  (See docket entry no. 6-1.)  In the Coexistence Agreement, the

parties recited that Thomson assigned to VOXX Int'l all right, title, and interest of Thomson and Thomson's Affiliates[5] in and to certain trademarks, and retained rights in certain other trademarks, pursuant to the Accessory Assignment Agreement and AV Assignment Agreement. (Id.)   Section 8.2 of the Coexistence Agreement extended the obligations thereunder to the parties' Affiliates and licensees, and obliged each party to be fully responsible and liable for violations of the Agreement by their Affiliates and licensees.  (See id.)  RCA is an Affiliate of Thomson, and VOXX Accessories and Alvox are Affiliates of VOXX Int'l.

> Each side claims that the other has used the RCA trademarks in violation of the relevant agreements.  RCA has licensed Alco Electronics, LTD ("Alco") to produce an RCA-branded tablet computer.  (RCA 56.1 St. ¶ 12.)  Alco produces RCA-branded tablets, including Model Nos. RCT6203W46KB, RCT6293W23, RCT6573W23, RCT6672W23, RCT6103W46, RCT6272W23, RCT6077W2, RCT6077W22, RCT6378W2, and RCT6691W3 (the "RCA Tablets")  (Id.)  The RCA Tablets have speakers and a microphone, and can connect to the internet and run various voice communication applications.  (Id. ¶ 13.)  For instance, the RCA Tablets are capable of placing or receiving voice calls or running video chats using the Skype application.  (Id.)  The voice call function in Skype permits a user of the RCA Tablets to engage in real-time, voice-to-voice communication with another Skype user just, just as a telephone does.  (Id.; see Second Decl. of James Tranchina Supp. VOXX Cross Mot. Partial S. J. ¶ 5 ("Tranchina Second Decl."), docket entry no. 115 ("The tablets that RCA provided to VOXX require access to a WiFi network and the addition and activation of a third-party software (like

---

[5] "Affiliates" is defined, with reference to the Annex I in the AV Purchase Agreement (docket entry no. 4-1), as "with respect to any Person, any other Person which directly or indirectly controls, is controlled by, or is under common control with such Person."

Skype and/or Google Hangouts) before they are capable of any manner of 'voice communication' at all.")[6]  VOXX claims that it has the right to use the RCA trademarks for the RCA Tablets.

The parties dispute the status of smartphones under the agreements.  Smartphones allow users to make and receive telephone calls.  (RCA 56.1 St. ¶ 11; see also Tranchina Second Decl. ¶ 5 ("All smartphones . . . can make emergency telephone calls as long as they have a live battery.").)  Smartphones, unlike traditional corded landline telephones, are not fixed in a particular location and, instead, are mobile.  (RCA 56.1 St. ¶ 11.)  They can be moved from place to place by, for instance, being carried in one's pocket or purse.  (Id.)

VOXX Int'l has marketed multi-purpose accessories, such as chargers to which electronic devices can be connected to via a USB cable, for use with iPods, cellphones, MP3 players, digital cameras and smartphones.  (See Spitzer Decl, Exs. J-M.)

In its First Claim for Relief in the First Amended Complaint ("FAC"), RCA asserts, inter alia, that VOXX Int'l and Alvox breached the licensing provision of the AV Assignment Agreement, and a corresponding provision of the Coexistence Agreement, by asserting that VOXX has a right, title or interest in the use of the RCA marks on the Alco-produced tablet computers and seeking royalties from Alco for use of those marks.  RCA further asserts that VOXX Int'l and Alvox breached the Coexistence Agreement by marketing accessory products, other than headsets, for use in conjunction with mobile phones.  (FAC ¶¶ 43-48.)  RCA seeks specific performance of the Coexistence Agreement, including declaratory relief as to its

---

[6]  VOXX does not proffer any facts contradicting RCA's characterizations of smartphones and tablets, but states instead that "[b]ased on currently available information, VOXX cannot determine whether it disputes [RCA's] assertions" regarding smartphones and tablets.  (See VOXX Resp. RCA's 56.1 St. at 6-7.)

rights thereunder, as well as any other remedies in connection with these alleged breaches.  (Id. ¶ 49.)

In the current motion practice, RCA requests "an order . . . (a) granting summary judgment on Counterclaim Count Two pursuant to the plain and unambiguous language of the parties' contracts; and (b) entering a declaration confirming that (i) RCA retained all rights in the relevant RCA trademarks with respect to smartphones; all tablets capable of running Skype, Google Hangouts, or any similar applications permitting voice-to-voice communications; and smartphone and cellphone accessories, and (ii) RCA retained all rights with respect to broad categories of 'Excluded Products,' not specific enumerated products . . . ."  (Docket entry no. 92.)  The Court construes the motion as one to dismiss the Second Counterclaim with respect to the described devices and for partial summary judgment in the form of declaratory relief on the First Claim of the FAC with respect to such devices.

VOXX opposes RCA's motion and seeks partial summary judgment resolving its Second Counterclaim in its favor, specifically a declaration that:

> (i) VOXX's use and distribution of VOXX's RCA trademarks in connection with smartphones, tablets, and related goods does not and will not constitute a breach of the AV Purchase Agreement, the AV Assignment Agreement, the Accessory Purchase Agreement, the Accessory Assignment Agreement, and/or the Trademark Coexistence Agreement and (ii) that RCA Trademark Management S.A.S.'s ('RCA') rights in the RCA trademark in connection with AV Products and Accessory Products are limited to those specific products enumerated by such agreements as 'Excluded Products' . . . .

(Docket entry no. 100.)  In the alternative, VOXX requests that the Court deny RCA's motion or

delay its resolution pending additional discovery pursuant to Federal Rule of Civil Procedure 56(d) on the definition of the terms "smartphone" and "tablet," and on other issues.

## DISCUSSION

A.     VOXX's Request for Denial or Deferral of Summary Judgment Pending Additional Discovery Pursuant to Rule 56(d)

As an alternative to its request for summary judgment on the Second Counterclaim, VOXX requests, pursuant to Federal Rule of Civil Procedure 56(d), that the Court deny RCA's motion or defer resolution of RCA's motion pending additional discovery. VOXX proposes to seek discovery as to: the definitions of the terms "tablet" and "smartphone"; whether tablets and smartphones are "generally considered to be derivative or extension products" of other known AV products; and whether tablets and smartphones were being researched or developed as of the closing date of the AV Assignment Agreement.

Pursuant to Rule 56(d), if a party opposing a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d) (effective Dec. 1, 2010). It is well established in this Circuit that a party seeking additional discovery under Rule 56(d), formerly Rule 56(f),[7] must submit an affidavit describing: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has

---

[7]     Prior to December 2010, the substance of Rule 56(d) was contained in subsection (f) of Rule 56. See Gene Codes Forensics, Inc. v. City of New York, 812 F. Supp. 2d 295, 304 (S.D.N.Y. 2011) (citing notes of the Advisory Committee on the 2010 amendments, stating that "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision(f).").

made to obtain those facts; and (4) why the affiant's efforts were unsuccessful." Shaheen v. Naughton, 222 Fed. Appx. 11, 13 (2d Cir. 2007) (quoting Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004) (internal quotation marks omitted)).  When its requirements are satisfied, Rule 56(d) "prevents the entry of summary judgment against a party where there is good reason to believe that evidence sufficient to defeat the motion for summary judgment exists, but the non-moving party legitimately needs discovery to get that evidence." Halebian v. Berv, 869 F. Supp. 2d 420, 438 (S.D.N.Y. 2012) (citation and internal quotation marks omitted).  Mere restatement of conclusory allegations and amplifying them only with speculation regarding what discovery might uncover is insufficient to defeat a motion for summary judgment. Id. (citation omitted); see also Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994) (material sought must be germane, not speculative or a "bare assertion" that the evidence supporting non-movant's allegations is in the hands of the movant).

VOXX's request must be denied because it has not demonstrated what facts are sought or how they are to be obtained, and has not identified any efforts on its part to obtain the facts or explained why its efforts were unsuccessful.  Most importantly, VOXX has not demonstrated that any of its proposed discovery requests are reasonably expected to raise a genuine issue of material fact.  VOXX asserts that it needs discovery as to the definitions of "smartphone" and "tablet" devices presented by RCA.  (See supra. pp. 5-6.)  RCA has proffered functional descriptions of these common devices.  VOXX has neither denied that smartphones in general and the RCA Tablets are capable of telephonic and/or voice communication functions, nor explained why it does not already have sufficient information to controvert these basic assertions by RCA.  VOXX has not proffered a description of any facts it would expect to obtain through discovery to raise any material factual issue with respect to the telephonic and/or voice

communication capabilities of the subject devices.  VOXX's bare assertion that it lacks information is insufficient to carry its burden under Rule 56(d).  VOXX's second and third requests, for discovery going to factual issues relating to terms used in the contracts' definitions of AV Products,[8] also fail to identify discovery likely to raise material issues of disputed fact, because the legal determinations sought here turn on the scope of the contractual exclusions from those categories rather than the scope of technology embraced by those categories in the first instance.

B.          The Parties' Cross-Motions for Declaratory Judgment on the Scope of RCA's Assignment to VOXX

RCA and VOXX seek declarations as to whether VOXX's assertion of rights to RCA's marks in connection with smartphones, tablets, and related accessories constitute breaches of the AV Assignment Agreement and/or the Accessories Assignment Agreement.  RCA argues that the agreements unambiguously provided for RCA's retention of its rights in the marks with respect to those products, warranting summary judgment in its favor.  VOXX asserts that the agreements are ambiguous, and that RCA's reading of the agreements is commercially unreasonable.

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is considered material if it "might affect the outcome of the suit under the governing law," and a dispute of fact is "genuine" where "the

---

[8]     "AV Products" are defined to include, <u>inter alia</u>, "any products which are subsequent to the closing date generally considered to be derivative or extension products of [the types of consumer electronic devices listed in the provision] or their combinations, and any products currently being researched, developed and/or sold by the existing AV Business as of the Closing Date."  (AV Assignment Agreement, Ex. 2, docket entry no. 5-1.)

evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-moving party, no reasonable trier of fact could find in favor of that party."  Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (citation omitted).   When a properly supported motion for summary judgment is made, the adverse party must set forth "specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 249 (internal quotation marks and citation omitted).  If the evidence presented by the non-moving party "is merely colorable, or is not significantly probable," summary judgment may be granted.  Id. at 250-51 (citations omitted). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). Where there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

Under New York law, "[w]hether a contract is ambiguous and the meaning of an unambiguous contract are questions of law." Oppenheimer & Co. v. Metal Mgmt., Inc., No. 08 CV 3697, 2011 WL 2462588, at *7 (S.D.N.Y. Jun. 20, 2011) (citing Diesel Props. S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 51 (2d Cir. 2011)).  "[T]he threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous." Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (citation and internal quotation marks

omitted).  "[I]f an agreement is 'complete, clear and unambiguous on its face, [, it] must be enforced according to the plain meaning of its terms.'"  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (citation and internal quotation marks omitted).  Where a contract provides for a clear exclusion from a general provision, that exclusion will be interpreted as overriding the otherwise applicable, or even inconsistent, general provision.  See In re Gulf Oil/Cities Service Tender Offer Litig., 725 F. Supp. 712, 729-30 (S.D.N.Y. 1989) (contract provision containing phrase "notwithstanding any other provision" means that it "takes precedence over" and explicitly overrides any contrary provision); cf. Morse/Diesel, Inc. v. Trinity Indus., Inc., 67 F.3d 435, 439 (2d Cir. 1995) (finding that district court erred in submitting contract's meaning to jury where "notwithstanding" clause trumps otherwise inconsistent clauses by its "unequivocal" language).

        Both the AV Assignment Agreement and the Accessory Assignment Agreement assigned the rights to defined sets of products to VOXX, but carved out "Excluded Products" from the assignment.  Under the AV Assignment Agreement, RCA assigned its marks to VOXX "solely with respect to all AV Products," which were broadly defined as "finished goods generally recognized in the consumer electronics industry, now or in the future, as consumer electronic audio and/or video products; except that AV Products shall not include any Excluded Products."  (Docket entry no. 5-1 (emphasis added).)  Products falling within the definition of "Excluded Products" were thus explicitly removed from this broad conceptual definition of AV Products and the non-exclusive list of specific types of AV Products included in the contractual provision.[9]  The parties' competing claims to rights to use the trademarks on smartphones and

---

[9]     The second sentence of Exhibit 2 provides, inter alia, that "AV Products shall include the following . . . provided that, in each case, such products are not

tablets must therefore turn on the definition of Excluded Products, which is set forth as a lengthy list of descriptions of types of consumer electronics products and includes the following provision:

> (d) mobile, corded and cordless telephones, VoIP products and any other product that includes telephonic or voice communication technology or features

(Id. Ex. 2.)  The AV Assignment Agreement defined "Retained Marks" as "the RCA Marks solely with respect to all goods and services other than AV Products."  (Id. § 1.1(s).)  Since "Excluded Products" are explicitly carved out of the definition of AV Products, they are "Retained Marks."  In Section 3.1 of the AV Assignment Agreement, VOXX Int'l explicitly "acknowledge[d] and agree[d] that all right, title and interest in the Retained Marks [we]re reserved and owned by [RCA]."  (Id. at § 3.1.)

VOXX, ignoring the "any other product that includes telephonic or voice communication technology" phrase in the quoted "Excluded Product" definition, asserts that smartphones and tablets cannot be Excluded Products because, unlike mobile, corded and cordless telephones, and VoIP products, they are not listed by product name in the agreement. VOXX proffers no legal authority or grammatical justification for its selective reading, nor does it demonstrate that there is any ambiguity in the "and any other" general phrase.  The Court, accordingly, finds that subdivision (d) of the Excluded Product definition is unambiguous as a matter of law, and turns to the question of whether any material factual dispute precludes summary judgment on the question of the status under the AV Assignment Agreement of

---

> Excluded Products: any DVD players . . ., GPS devices, . . . SACD, HD DVD and Blu-Ray Disc players, . . . MP3 and MP4 players, . . . and any products which are combinations of the foregoing. . . ."  (Id. (emphasis added).)

smartphones and of tablets capable of running Skype, Google Hangouts and other voice communication utilities.

There is no genuine dispute that smartphones and the RCA Tablets fall within the group of devices described as "mobile, corded and cordless telephones, VoIP products, and any other product that includes telephonic or voice communication technology or features," and therefore qualify as "Excluded Products."  Smartphones are mobile phones, and are certainly products that include "telephonic or voice communication technology or features."  (See RCA 56.1 St. ¶ 11; cf. Tranchina Second Decl. ¶ 5 ("All smartphones . . . can make emergency telephone calls as long as they have a live battery.").)  Indeed, the common name of these devices includes the descriptive word "phone."  VOXX's disingenuous claim that it is unable, "[b]ased on currently available information," to determine whether it disputes that "[s]martphones allow users to make and receive telephone calls" and are mobile (VOXX Resp. RCA 56.1 St. ¶ 11) is tantamount to a conclusory denial and is therefore insufficient to indicate the existence of a genuine factual dispute, whether actual or potential.  See Hicks, 593 F.3d at 166.  Moreover, VOXX's own declarant's statement that smartphones are capable of making emergency calls confirms the absence of a genuine dispute of the fact that smartphones are "mobile . . . telephones" and have "telephonic or voice communication technology or features."  (See Tranchina Second Decl. ¶ 5.)

Likewise, VOXX does not raise a genuine factual dispute with respect to whether the RCA Tablets qualify as "Excluded Products."  The RCA Tablets produced by Alco have speakers and a mircophone and can connect to the Internet and run various voice communication applications, such as Skype.  (Cantin Decl. ¶¶ 5-8; cf. Tranchina Second Decl. ¶ 5 (acknowledging that the RCA Tablets are "capable" of voice communication, with the installation

of third-party software).)  VOXX claims that it is unable, "[b]ased on currently available information," to determine whether it disputes RCA's assertion that the RCA Tablets are capable of running voice-to-voice communication applications, such as Skype, enabling real-time communication akin to a telephone call."  (VOXX Resp. RCA 56.1 St. ¶ 13.)  VOXX, a sophisticated player in the industry, has proffered no reason why it could not verify or dispute specifically these basic facts regarding these products; its assertion raises no genuine issue of fact.

While VOXX admits that the RCA Tablets are capable of providing voice-to-voice communication, it argues that the RCA Tablets are not "inherently capable" of such communication because a WiFi connection and third-party application would be required to make such communications over the tablet.  (See VOXX Reply Memo. Law Supp. Partial S.J. at 8.)  VOXX further contends that the fact that "Google Hangouts 'comes preinstalled' on some or all of the RCA Tablets is immaterial, as such tablets remain incapable of 'voice communication' unless and until a user takes affirmative steps to create an account . . . ."  (Id. at n.2.)  VOXX's attempt to raise a material factual issue based on "inherent capab[ility]" or activation requirements is unavailing.  The plain language of the contract, which describes an "Excluded Product" in an unqualified manner as "any other product that includes telephonic or voice communication technology or features," renders VOXX's arguments groundless.  The undisputed facts demonstrate that the RCA Tablets include features and technology (i.e., microphones, speakers, and capability of running relevant software) for voice communication over the Internet and therefore, like telephones that must be connected to a land-line, Internet, or cellular service to function as communication devices, fall unambiguously within the Excluded Products definition.  This definition looks to functional capability and technological features, and is not limited to devices on which all relevant software has been installed and activated.  Indeed, the inclusion of

"VoIP products," or Voice over Internet Protocol products, in another subdivision of the "Excluded Products" definition reinforces the conclusion that RCA deliberately and unambiguously retained its rights with respect to products enabling voice communication via the Internet.[10]

VOXX's protestation that RCA's retention of rights with respect to smartphones and voice communication-capable tablet computers is commercially unreasonable is also an empty proposition. The unambiguous contract, entered into between two commercially and technologically sophisticated parties, merely allocated business opportunities between the two parties. That VOXX did not receive the right to exploit the trademarks in connection with devices that have since become popular does not render the allocation commercially unreasonable.

VOXX's arguments regarding acquisition of the right to exploit the RCA trademarks with accessories marketed as ones for use with cellphones and smartphones are similarly unavailing. Under the Accessories Assignment Agreement, RCA assigned its marks to VOXX for "Accessory Products," defined as "all finished goods generally recognized in the consumer electronics industry, now or in the future, as consumer electronic accessories." (RCA 56.1 St. ¶ 4; Accessories Assignment Agreement, Ex. 2.) "Excluded Products," which were explicitly carved out from the definition of "Accessory Products," comprise "(d) accessories, other than headsets, designed or marketed for use in conjunction with any cellular, satellite or

---

[10] VoIP, or Voice over Internet Protocol, is defined by the Federal Communications Commission as "a technology that allows you to make voice calls using broadband Internet connection instead of a regular (or analog) phone line." (See Voice Over Internet Protocol, FCC, https://www.fcc.gov/encyclopedia/voice-over-internet-protocol-voip (last visited January 28, 2016).

other mobile telephone (other than corded and cordless telephones)." (Id. (emphasis added).) Furthermore, there is no dispute that smartphones and cellphones are telephones that are mobile and are neither corded nor within the category of "cordless telephones." The plain language of the contract thus unambiguously puts accessories for smartphones and cellphones into the definition of Excluded Products as to which RCA retained trademark exploitation rights. There is no dispute that VOXX has marketed RCA-branded accessories as ones for cellphones and/or smartphones. (See Spitzer Decl. Exs. J-M.) Such usage of the RCA marks is violative of the unambiguous terms of the governing contracts.

In opposition to RCA's arguments with respect to both agreements, VOXX principally argues that the definitions of "AV Products" and "Accessory Products" plainly cover and are inclusive of the smartphones, tablets, and related accessories at issue, and that the agreements are ambiguous as to whether the parties intended to resolve their rights as to such later developed technology. VOXX, for instance, argues that the definition of AV Product includes "derivative or extension products" or "combinations" of, inter alia, DVD players, CD players and recorders, GPS devices, Internet radio players, MP3 and MP4 players ("Specified Products") (AV Assignment Agreement, Ex. 2), which would also cover smartphones and tablets, and asserts that there is a factual issue as to whether smartphones and tablets constitute such derivative, combination or extension products. VOXX's contentions in this regard do not preclude summary judgment for RCA because, as demonstrated above, the Excluded Products definition unambiguously retains rights in smartphones, cellphones and voice communication-capable tablets for RCA even if those devices would otherwise fall into the category of AV Products. (See AV Assignment Agreement, Ex. 2 ("'AV Products' means finished goods generally recognized in the consumer electronics industry, now or in the future, as consumer

electronic audio and/or video products; except that AV Products shall not include any Excluded Products."); Accessory Assignment Agreement, Ex. 2 ("Notwithstanding anything in this Agreement to the contrary, 'Excluded Products' mean (and Accessory Products shall not include) any of the following (including items whether existing now or in the future) . . . ."). Thus, even if a product would otherwise be an "AV Product" or "Accessory Product" without considering the carve-out, if such a product is also an "Excluded Product," it is explicitly exempted from the assignment to VOXX. See Morse/Diesel, Inc., 67 F.3d at 439; In re Gulf Oil/Cities Service Tender Offer Litig., 725 F. Supp. at 729-30.

In its reply memorandum, VOXX proposes that "at least one possible reading" of the "Excluded Products" provision under the AV Assignment Agreement is that it refers "only to those devices that are exclusively or predominantly 'telephonic' in nature." (VOXX Reply Memo. Law at 5.) This reading is unsupported by the plain text of the agreement, which contains no such qualifiers.[11] Indeed, the agreements themselves could not be more clear: "AV Products shall include the following [Specified Products], each in the form of a finished good and provided that, in each case, such products are not Excluded Products." (AV Assignment Agreement, Ex. 2 (emphasis added); see also Accessory Assignment Agreement, Ex. 2.) To interpret the agreement otherwise would be to ignore the plain meaning of the contractual language. Because the agreements are unambiguous with respect to the products that are described in the Second Counterclaim, the Court declines to engage the parties' arguments pertaining to extrinsic evidence. See Oxford Commercial Corp. v. Landau, 190 N.E.2d 230, 231 (N.Y. 1963).

---

[11] Because the Court finds that smartphones and tablets fall within the definition of "(d) mobile, corded and cordless telephones, VoIP products and any other product that includes telephonic or voice communication technology of features," it need not consider whether they also fall into other categories of "Excluded Products."

VOXX also argues that RCA, as the "licensor currently seeking to benefit from the unexpressed exclusion" of an assignment of rights, should bear the burden of negotiating and framing an exception.  (See VOXX Memo. Law at 9-10.)  This argument does nothing to further VOXX's position here because, as explained above, the exclusion clearly was negotiated and is unambiguously expressed in the relevant agreements.  For the foregoing reasons, VOXX's motion for summary judgment on the Second Counterclaim is denied and RCA's motion is granted in part.

CONCLUSION

VOXX's motion for summary judgment on its Second Counterclaim and for discovery pursuant to Federal Rule of Civil Procedure 56(d) is denied.  RCA's motion for summary judgment dismissing the Second Counterclaim is granted to the extent that the motion and counterclaim concern VOXX's use of RCA trademarks on smartphones or on tablet computers that are capable of voice communication and on accessories designed or marketed for use with smartphones and/or cellphones.

RCA is further granted the following declaratory relief in respect of its breach of contract claim in its First Cause of Action.  The Court declares that RCA has retained all rights in the relevant RCA trademarks with respect to: smartphones; tablet computers that include microphones and speakers that are capable of running Skype, Google Hangouts, or any similar applications permitting voice-to-voice communication; and accessories designed or marketed for use with smartphones and/or cellphones.  The Court further declares that subdivision (d) of the Excluded Products provision of the AV Trademark Assignment Agreement affects a retention of rights as to the categories of products having the qualities or features referenced therein, and that

the retention of rights is not limited to rights to use trademarks with respect only to devices specifically referenced by name in the provision.

This Memorandum Opinion and Order resolves docket entry numbers 92 and 100.

The final pre-trial conference in this matter is scheduled for April 1, 2016.  The parties must consult and make submissions in advance of the conference as required by the Pre-Trial Scheduling Order (docket entry no.  83.)  The parties are further directed to meet promptly with Magistrate Judge Pitman for settlement purposes.


Dated: New York, New York
      February 2, 2016

                                              /s/ Laura Taylor Swain
                                             LAURA TAYLOR SWAIN
                                             United States District Judge